**Dated: August 16, 2024**

**The following is ORDERED:**





Janice D. Loyd
U.S. Bankruptcy Judge

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Wright Brothers Aircraft Title, Inc., | ) | Case No.  21-10994-JDL |
| | ) | Ch.  7 |
| Debtor. | ) | |
| | ) | |
| Douglas N. Gould, Trustee for the Estate of Wright Brothers Aircraft Title, Inc., | ) ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. No. 23-1025-JDL |
| | ) | |
| Steve Erwin, | ) | |
| | ) | |
| Defendant. | ) | |

**Memorandum Opinion and Order**

**I. Introduction**

The Trustee brought this adversary proceeding seeking a judicial determination that some $300,000 in an investment account in the name of the Debtor, Wright Brothers Aircraft Title, Inc. ("WBAT"), is property of the bankruptcy estate. Defendant Steve Erwin

("Erwin") contends that his personal funds deposited in WBAT's account did not convey any beneficial interest to WBAT; that such funds constitute the *res* of a "resulting trust" of which he is the beneficial owner; and therefore the funds are not property of the bankruptcy estate.

On January 23, 2024, the matter came on for trial. After considering the documentary and testimonial evidence, matters of which the Court can take judicial notice and the arguments of counsel, in accordance with Fed. R. Bankr. P. 7052[1] the below constitutes the Findings of Fact and Conclusions of Law which form the basis of this Court's opinion determining that the subject funds are property of the bankruptcy estate. A separate judgment will be entered pursuant to Rule 7058.

## II. Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b), and 157(a) and the Order of Reference of the United States District Court for the Western District of Oklahoma as Local Rule LCvR 81.4(a). This matter seeking a determination of whether property is property of the bankruptcy estate under 11 U.S.C. § 541(d)[2] is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O) over which this Court has authority to enter a final order. Furthermore, in accordance with Rules 7008 and 7012(b) the parties have consented to the jurisdiction of this Court and its ability to enter final orders or judgment. Venue is proper pursuant to 28 U.S.C. § 1409(a).

---

[1] Unless otherwise indicated, are all references to "Rule" or the "Rules" are to the Federal Rules of Bankruptcy Procedure ("Fed. R. Bankr. P.").

[2] Unless otherwise indicated, all statutory references and citations are to the Bankruptcy Code, Title 11 U.S.C. §§101-1532.

### III. Background-The Criminal Case

This adversary proceeding is brought against the backdrop of a multimillion dollar Ponzi scheme[3] and criminal conspiracy conducted by WBAT, an aircraft registration and title company located in Oklahoma City of which Debra Mercer-Erwin ("Mercer-Erwin") was the President and 100% owner.[4] Defendant Erwin is the husband of Mercer-Erwin. According to information presented in Federal Court in Texas, Mercer-Erwin and her daughter, Kayleigh Moffet, conspired with others, primarily a foreign national, Frederico Machado, to enable distribution of cocaine in United States by purchasing and illegally registering aircraft under foreign corporations and other individuals for export to other countries.[5] The Indictment details that between 2016 and 2020, WBAT, Mercer-Erwin and Machado were engaged in approximately $350 million in criminal activity which included a Ponzi Scheme in which funds from "investors" were deposited in to escrow accounts with WBAT purportedly for the purchase of aircraft. In fact, the aircraft purchases were fictitious because the aircraft either did not exist or were owned by someone not involved in the transaction. The transactions were not real aircraft sales but a Ponzi Scheme in

---

[3] A "Ponzi" scheme, as that term is generally used, refers to an investment scheme in which returns to investors are not financed through the success of the underlying business venture, but are taken from principal sums of newly attracted investments. Typically, investors are promised large returns for their investments. Initial investors are actually paid the promised returns, which attract additional investors. *In re Hedged-Investments Associates, Inc.,* 48 F.3d 470, 471 n. 2 (10th Cir. 1995).

[4] In discussing Mercer-Erwin's criminal activity the Court does not imply that Defendant Erwin was engaged in any wrongdoing. There is nothing in the record to suggest that Erwin had anything to do with his wife's misdeeds. The Court points out the criminal case merely because Mercer-Erwin was the individual that had sole control of the WBAT investment account into which Defendant Erwin deposited the funds which are the subject of this adversary proceeding.

[5] *Fifth Superseding Indictment, United States of America v. Debra Lynn Mercer-Erwin*, et al, Case No. 20-CR-00212, Doc. 224, (E.D. Tex., Sherman Division, 2023).

which earlier deposited funds were repaid, with interest, by funds deposited by subsequent "buyers" (investors) of non-existent aircraft.

After a two-week jury trial, in May 2023, Mercer-Erwin was convicted of money laundering; wire fraud; conspiracy to manufacture and distribute cocaine; and conspiracy to manufacture and distribute cocaine knowing that it would be imported into the United States.[6]

### IV. Facts

1. On April 19, 2021, CCU Aviation Finance, LLC, CCU Holdings, Inc. and Metro City Holdings, LLC, commenced an involuntary bankruptcy action against WBAT. On August 20, 2021, the Bankruptcy Court entered its Order for Relief creating the bankruptcy estate.

2. Prior to WBAT's bankruptcy Erwin was employed by WBAT and its affiliate, Aircraft Guaranty Corp. ("AGT"), "basically running QuickBooks programs for WBAT and AGT" and being "kind of an errand boy for my wife" who was the President and owner. Erwin was paid an annual salary of $100,000, $50,000 by each of WBAT and AGT.

3. Prior to bankruptcy, WBAT maintained two (2) investment or brokerage accounts at Raymond James Financial Services ("Raymond James") (the "WBAT Accounts"), only one, Account #9741, is at issue here.[7]

---

[6] Mercer-Erwin has not yet been sentenced. Mercer-Erwin's daughter, Kayleigh Moffet, pled guilty to conspiracy to commit money laundering and conspiracy to commit export violations. She was given a sentence of five years probation. Frederico Machado, who was indicted along with Mercer-Erwin, fled the United States before trial and is believed to be living in Argentina.

[7] The other account at Raymond James did not contain any funds to which Erwin was making claim, and the funds in that account were collected by the Trustee and made part of the bankruptcy estate.

4. The WBAT Accounts were owned by WBAT, with account #9741 being opened by WBAT President Debbie Mercer-Erwin in July 2012.

5. All tax reporting on the WBAT Accounts was done under the tax identification number of WBAT.

6. On March 16, 2020, Mercer-Erwin deposited $5000 into WBAT account #9741 for the purchase of 175 shares of OneOK stock at $13.63/share for the price of $4,679.41.

7. On March 18, 2020, Erwin paid $55,000 from his personal account at Tinker Federal Credit Union to WBAT account #9741 by a check payable to Raymond James. Previous to the OneOk stock purchase by his wife, Erwin had established an investment account in his name at Raymond James, but he did not discuss with the Raymond James representative using that account or setting up a new account in his name for the purchase of OneOk stock: "I just knew it was my wife's account, so I just told him (Raymond James representative Sean Powell) to put it in there." Erwin "told him (Powell) to put it in the Wright Brothers' account."

8. Erwin was aware that he was putting his money into the Raymond James account over which he had no authority to transact business.

9. Erwin instructed the Raymond James agent to use $54,522 of the deposited funds to purchase 4000 shares of OneOK stock at a value of $13.63/share. The shares of the OneOK stock were held in the name of WBAT in account #9741.

10. On May 2, 2022, the Trustee made a demand on Raymond James to turnover the balances held in the WBAT Accounts. After Raymond James declined to release the funds, on May 25, 2022, the Court entered an order directing Raymond James to turn over to the Trustee all funds which it was holding in WBAT accounts. [Doc. 180]. On June 2,

5

2022, Raymond James paid the Trustee the sum of $319,649.07 from WBAT account #9741 and $1,388.02 from account #D252.

11. Erwin claims an interest in WBAT account #9741 in the amount of $306,250.28.[8]

12. At trial, Erwin testified that:

    (a). The funds deposited in the WBAT Accounts at Raymond James were solely from his personal funds from his General Motors retirement account;

    (b). His intention at the time of the transaction was to maintain a beneficial interest in the proceeds of the stock purchased with his personal funds;

    (c). At no time did he intend to gift or otherwise convey to WBAT his interest in the $55,000, or the OneOK stock purchased therewith;

    (d). WBAT did not, and never has, held a beneficial interest in the Raymond James Account which Erwin caused to be deposited;.

    (e). At the time Erwin instructed Raymond James to sell the OneOK stock in May of 2022, the value of the stock directly attributed to his initial $55,000 deposit was $306,250.28;

13. In December 2020 and January 2021, the U.S. Government, purportedly acting under the Mandatory Victim's Restitution Act, 18 U.S.C. § 3613(a), shut down WBAT's operations and seized approximately $14 million in various accounts held by WBAT. The government did not lay claim to any funds held in the WBAT brokerage accounts with Raymond James.

---

[8] This was comprised of $286,680 from the sale of 4000 shares of OneOK stock (valued at $71.67/share) on March 25, 2022, plus approximately $13,400.00 in accumulated quarterly dividends from the 4000 shares at $.935/share.

14. From the time of the Government's seizure of the assets of WBAT in December 2020 until the spring of 2022, Erwin did not take any action to obtain possession of the funds or stock in the WBAT account at Raymond James.

15. There was no evidence introduced as to tax filings for years 2020 and 2021. IRS form 1099-S for tax year 2022, used to report non-employment income, was issued to WBAT.

## V. Discussion

**Whether the Funds on Deposit in the WBAT Accounts with Raymond James are Subject to a Resulting Trust and Thus Not Part of the WBAT Bankruptcy Estate**

Section 541 broadly defines property of the estate subject to specific interests that are excluded from estate property. In the present case, the subsections pertinent for defining property of the bankruptcy estate are § 541(a)(1) and (3) which state:

> (a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:
>
> (1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as the commencement of the case.
> ***
> (3) Any interest in property that the trustee recovers under section 329(b), 363 (n), 543, 550, 553 or 723 of this title.

11 U.S.C. § 541(a)(1) and (3).

While § 541(a)(1) includes all of a debtor's legal or equitable interests as property of the estate, § 541(d) operates to exclude those equitable interests of which a debtor

7

holds only bare legal title. Section 541(d) provides, in pertinent part:

> Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, ... becomes property of the estate under subsection (a)(1) or (2) of this section *only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not* hold.

(Emphasis added).

The definition of a resulting trust is set forth in the *Restatement (First) of Trusts* § 404:

> A resulting trust arises where a person makes or causes to be made a disposition of property under circumstances which raise an inference that he does not intend that the person taking or holding the property should have the beneficial interest therein, unless the inference is rebutted or the beneficial interest is otherwise effectively disposed of.

Property that is subject to a constructive or resulting trust is not property of the bankruptcy estate. *See e.g. In re Arzate,* 618 B.R. 535, 541 (Bankr. W.D. Okla. 2020); *In re Halverson*, 151 B.R. 358, 362 n. 6 (M.D. N.C. 1993) (Section 541(d) states that property of which the debtor only has legal title and not an equitable interest only becomes property of the estate to the extent of the debtor's legal title but not the extent of any equitable interest in such property that the debtor does not hold); *In re Unicorn Computer Corp.,* 13 F.3d 321 (9th Cir.1994); *In re Foos*, 183 B.R. 149, 156 (Bankr. N.D. Ill. 1995), (quoting *In re N.S. Garrott & Sons,* 772 F.2d. 462, 466 (8th Cir. 1985)) ("Where the debtor's interest in property is limited to that of a trustee, no other interest (specifically, the beneficiary's equitable interest) in that property becomes part of the estate... That is, 'where the debtor holds bare legal title without any equitable interest, the estate acquires bare legal title

8

without any equitable interest.'").

The Supreme Court has made clear that "[p]roperty interests are created and defined by state law" in bankruptcy proceedings. *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914 (1979); *In re Marshall,* 550 F.3d 1251, 1255 (10th Cir. 2008).  The Oklahoma Supreme Court has described a resulting trust as follows:

> Resulting trusts arise where the legal estate in property is disposed of or acquired, not fraudulently or in violation of any fiduciary duty, but the intent appears or is inferred from the terms of the disposition, or from the accompanying facts and circumstances, that the beneficial interest is not to go to or be enjoyed with the legal title.  In such a case, a trust is implied or results in favor of the person for whom the equitable interest is assumed to have been intended, and whom equity deems to be the real owner.  Intention and consideration are essential elements of a resulting trust.

*Cacy v. Cacy,* 1980 OK 138, 619 P.2d 200, 202; *In re Semcrude, L.P.*, 418 B.R. 98 (Bankr. D. Del. 2009) ("In Oklahoma, '[r]esulting trusts are those which arise where the legal estate in property is disposed of, conveyed, or transferred, but the intent appears or is inferred from the terms of the disposition, or from accompanying facts and circumstances, that the beneficial interest is not to go to or be enjoyed with the legal title.'"); *In re Fletcher,* 2015 WL 1239811, at *10 (Bankr. N. D. 2015) (quoting *Powell v. Chastain*, 318 P.2d 859, 862 (Okla. 1957); *Naylor Farms, Inc. v. Anadarko OGC Company,* 2011 WL 7267853, at *1 (W.D. Okla. 2011) ("A resulting trust ... may be judicially imposed on one holding legal title to property if it was obtained under facts and circumstances disclosing an intention that the beneficial interest was not to be enjoyed by the legal title holder." (citing *Wooten v. Melton*, 631 P.2d 1337, 1341 (Okla.Civ.App 1981); *In re Harrison,* 503 B.R. 835 (Bankr. N.D. Okla. 2013); *In re Commercial Financial Services, Inc.*, 268 B.R. 579, 606 (Bankr. N.D. Okla.

9

2001).

Oklahoma courts place a high burden of proof on the party seeking to establish a resulting trust. As stated in *Cacy,* 619 P.2d at 202:

> A constructive or resulting trust arises entirely by implication of law, irrespective of contract. Although the Statute of Frauds does not preclude the establishment of such trusts by parol evidence, it is difficult to prove their existence. Evidence must be clear, unequivocal and decisive beyond a reasonable doubt. A mere preponderance of the evidence is not sufficient. Evidence of the most satisfactory kind must be produced by the party seeking to establish the trust.") (footnotes omitted).

*Taylor v. Rupp (In re Taylor),* 133 F.3d 1336,1341 (10th Cir.1998) ("[T]he proof required to impose a resulting trust 'must be strong, clear, and convincing, such as to leave no doubt of the existence of the trust,' and that it was the intention 'at the time of the transfer and not at some subsequent time which determines whether a resulting trust arises.'").

The party claiming a resulting trust cannot satisfy its burden of proof merely by presenting some evidence in support of its claim. The party asserting a resulting trust bears the burden of proving the existence of the resulting trust by the clear and convincing standard, which requires "evidence demonstrating 'that there is no serious or substantial doubt as to the correctness of the conclusion.'" *In re McCauley*, 549 B.R. 400, 412 (Bankr. D. Utah 2016). In short, "obtaining a resulting trust under Oklahoma law is no easy task; the burden of proving an implied trust is on ... the party asserting one exists, and proof of the resulting trust must be 'clear, unequivocal, and decisive.'" *In re SemCrude L.P.,* 418 B.R. 98, 103 (Bankr. D. Del.2009) (quoting *Gazalski v. Goss (In Matter of Estate of Ingram)*, 874 P.2d 1282, 1287 (Okla.1994)); *In re Davenport*, 268 B.R. 159 (Bankr. N.D. Ill. 2001) ("The burden of proof to establish such trust is on the party claiming a resulting

10

trust, and the evidence must be clear and convincing; if doubtful, or susceptible to other reasonable interpretation, the evidence is insufficient to show a resulting trust.").

It is fundamental that a resulting trust requires an *intent* to retain a beneficial interest. *Cacy,* 619 P.2d at 202-03. "[I]t is the intention 'at the time of the transfer and not at some subsequent time which determines whether a resulting trust arises." *Taylor,* 133 F.3d at 1341 ("Intention and consideration are essential elements of a resulting trust. Intent can be actual, or implied from the nature of the transaction and the facts surrounding it."); *Arzate,* 618 B.R. at 542.

Accordingly, to prevail on his resulting trust claim, Erwin must establish that while he was the transferor of the invested funds he did not intend that Wright Brothers should have the beneficial interest therein. In response, the Trustee relies upon certain factors which courts use for determining whether the parties intended to convey a beneficial interest: (1) whether the grantor relinquished possession of the property; (2) whether the grantor paid taxes or encumbrances on the property; and (3) whether the grantee took possession of or exercised dominion over the property. *Arzate,* 618 B.R. at 542.

The Trustee argues that the facts and circumstances surrounding the subject transaction are not sufficient for Erwin to meet the high burden of proof to establish that he had the requisite to retain a beneficial interest in the Raymond James account. On the other hand, Erwin's evidence consists of his own statements as to his intent in retaining that beneficial interest and not passing it on to WBAT.

The only evidence from which the Court could find a resulting trust was the self-serving testimony of Erwin, the only trial witness. As indicated in *Fenton v. Walter,* 612

11

S.W.2d 17, 19 (Mo.App. S.D.1981), "[t]he testimony of a party may be accepted, although it is not required to be accepted, as the basis for the declaration of a resulting trust." A resulting trust is based upon the presumed intention of the parties distilled from their conduct; it comes into being at the instant the title vests, or not at all. *Hanley v. Hanley,* 14 Ill.2d 566, 152 N.E.2d 879; *Tuntland v. Haugen,* 399 Ill. 595, 78 N.E.2d 308, 312.

As stated above, it is the intent *at the time of the transfer of the property*, not stated at some later time, that determines whether the transaction can be deemed a resulting trust. Here, Erwin admitted that at the time the funds were deposited in the WBAT account there was no discussion between him and his spouse or the Raymond James employee as to whether Erwin was to be the sole beneficial owner of the funds. In fact, the circumstances surrounding the deposit do not support Erwin's contention that he did not intend WBAT to have any beneficial interest in the funds. At the time of the deposit Erwin had an existing account with Raymond James in his own name. Erwin admitted that he knew how to set up a personal account with Raymond James. When asked by the Trustee's counsel as to whether he had any discussion with the Raymond James representative about the advisability of setting up his own personal account to engage in the transaction, Erwin responded that, "No, I didn't. I just - - I knew that was my wife's account, so I just told him to put it in there."

Following the March 2020 deposit of the funds into the WBAT account, the account continued to be owned and controlled by Mercer-Erwin. After learning that the government had seized the business and assets of WBAT in December 2020, Erwin took no action to reclaim the funds from the Raymond James account. After learning of the involuntary bankruptcy filed against WBAT in April 2021, Erwin again took no action to obtain the

12

funds.  It was not until March 2022, when Raymond James representative Sean Powell, "reached out to me" and said that the OneOK stock was worth $70 a share and should be sold that he sought to reclaim the funds.  Leaving the funds in the WBAT for two years, particularly given his wife's and WBAT's legal problems, before taking any action to reclaim the same belies Erwin's claim that he never intended WBAT to have any interest in the funds.  It appears to the Court that Erwin's failure to deposit the funds in a separate personal account at Raymond James with which he was familiar and then waiting two years to reclaim the funds is plausibly indicative of Erwin having no initial intent to create a resulting trust but rather to simply use the WBAT account for convenience purposes as his own "piggy bank" when in fact he had no right to do so.  In doing so Erwin, unfortunately, placed himself in jeopardy.

Under the law, determining intent is a question of fact for the Court.  The problem for Erwin is the extraordinary, onerous burden of proof cast upon one asserting the existence of a resulting trust: as stated above, it is Erwin's burden to prove by evidence that is clear, unequivocal, and decisive beyond a reasonable doubt; and if doubtful, or susceptible to other reasonable interpretation, the evidence is insufficient to show a resulting trust.  *In re SemCrude L.P.,* 418 B.R. at 103; *Davenport*, 268 B.R. at 163.  Erwin cannot alleviate himself of his ultimate burden of proof by merely presenting some evidence (here only his self-serving testimony) in support of his claim.  It is the Court's opinion that the proof offered by Erwin in this case does not meet the required standard to establish a resulting trust in his favor. Accordingly,

The Court finds that the $318,261.05 being held by the Trustee from Wright Brothers Aircraft Title, Inc.'s account #9741 with Raymond James and Associates Inc. is

13

property of the Bankruptcy Estate of Wright Brothers Aircraft Title, Inc.

Pursuant to Rules 7058 and 9021, a separate Judgment will be entered in favor of the Plaintiff, Douglas N. Gould, Chapter 7 Bankruptcy Trustee for the Estate of Wright Brothers Aircraft Title, Inc. and against Defendant Steve Erwin.

# # #